No. 69,429

IN THE MATTER OF JACQUELINE EDGAR-AUSTIN, *Respondent.*

(855 P.2d 960)

Opinion filed July 9, 1993.

*Martha M. Snyder*, deputy disciplinary administrator, argued the cause, and *Bruce E. Miller*, disciplinary administrator, was on the formal complaint for petitioner.

*Jacqueline Edgar-Austin* appeared pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the Office of the Disciplinary Administrator against Jacqueline Edgar-Austin, of Mission, Kansas, an attorney admitted to the practice of law in Kansas.

A hearing panel of the Kansas Board for Discipline of Attorneys made the following findings of fact:

## FINDINGS OF FACT

"1. Jacqueline Edgar-Austin is an attorney at law, Kansas Attorney Registration No. 11739. Her last registration address with the Clerk of the Appellate Courts of Kansas is 5700 Broadmoor, Suite 1008, Mission, Kansas 66202.

"2. Joseph and Patricia Gutierrez retained Ms. Edgar-Austin on January 28, 1989, to file a Chapter 7 bankruptcy on their behalf. The agreed-upon fee was $500.00 and the filing fee was $90.00. Mr. and Mrs. Gutierrez paid $400.00 in January of 1989 and the remaining $190.00 in May of 1989.

"3. From January of 1989 until May of 1989 Mr. and Mrs. Gutierrez gathered the information that Ms. Edgar-Austin said would be needed in order to file the bankruptcy petition, including documents pertaining to a previous business venture which involved a Small Business Administration loan. Ms. Edgar-Austin told Mr. and Mrs. Gutierrez in May and June that she had all the necessary information to file the case and that it would be filed in June. Ms. Edgar-Austin later told Mr. and Mrs. Gutierrez that she needed additional information before the petition could be filed.

"4. During July and August of 1989, Mr. and Mrs. Gutierrez called to ask why their creditors had not been informed of the filing of the bankruptcy. Ms. Edgar-Austin told them that it took time for the court to notify the creditors.

"5. On September 28, 1989, after placing numerous telephone calls to Ms. Edgar-Austin which were not returned, Mrs. Gutierrez contacted the clerk of the bankruptcy court and learned that the case had not been filed. By letter dated September 28, 1989, Mr. and Mrs. Gutierrez informed Ms.

Edgar-Austin that they had learned that the case had not been filed. They further informed her that, based on this misrepresentation and on her failure to take the requested action, they were terminating their relationship with her. They demanded a return of the $590.00 which they had paid.

"6. Ms. Edgar-Austin responded to Mr. and Mrs. Gutierrez by letter dated September 29, 1989. She indicated the delay was due to the need to gather additional information on their previous business venture and the unpaid sales taxes. She further wrote:

'At this point, your paperwork is in completed form and it has been in completed form for some time, and I believed it could have been forwarded to the court along with several other petitions I filed at the same time. Apparently, it was not included among these . . . .'

"7. Mr. and Mrs. Gutierrez agreed to allow Ms. Edgar-Austin to continue their representation. On October 7, 1989, they met with Ms. Edgar-Austin and supplied some additional information. On October 20, 1989, Ms. Edgar-Austin informed Mr. and Mrs. Gutierrez that she had determined that the sales tax was not dischargeable so it would not be included in the petition. She stated she did not want to 'arouse sleeping dogs.' She indicated that the petition was ready for filing and Ms. Edgar-Austin said she would try to get it filed yet that afternoon.

"8. As a result of this conversation, Mr. and Mrs. Gutierrez believed Ms. Edgar-Austin had resolved the sales tax liability issue and had filed the bankruptcy petition. On Tuesday, October 24, 1989, Ms. Edgar-Austin told Mrs. Gutierrez she had not been able to get the case filed the previous Friday but a runner was en route to the courthouse to file the petition. She further told Mrs. Gutierrez she would not have a case number until later that afternoon but would call Mrs. Gutierrez with that information. Mrs. Gutierrez did not hear from Ms. Edgar-Austin. She called Ms. Edgar-Austin several times a day for the rest of the week but her calls were not returned. On Friday, October 27, 1989, Mrs. Gutierrez again called the clerk of the bankruptcy court and was again told the case had not been filed.

"9. On Tuesday, October 31, 1989, Mr. Gutierrez went to Ms. Edgar-Austin's office and demanded a bankruptcy case number or some similar evidence by which he could be assured that the case had actually been filed. In a letter to Mr. and Mrs. Gutierrez dated October 31, 1989, Ms. Edgar-Austin acknowledged she had not returned their telephone calls and indicated that although she had told Mrs. Gutierrez she was filing the bankruptcy petition she had decided there existed the need for additional research on the sales tax liability issue. She believed this could be accomplished 'within the next few days.'

"10. After Mr. Gutierrez's visit to the office of Ms. Edgar-Austin the petition was filed the following day. The sales tax was not listed as a liability. Mr. and Mrs. Gutierrez were granted a discharge on March 22, 1990.

"11. By letter dated September 17, 1991, Mr. and Mrs. Gutierrez requested a copy of their discharge papers and the return of all documents

they had provided to Ms. Edgar-Austin for preparation of the bankruptcy petition.

"12. The letter of complaint was sent by Mr. and Mrs. Gutierrez on January 23, 1992, and received on February 6, 1992. This letter complains in part about the failure of Ms. Edgar-Austin to return their papers to them.

"13. Ms. Edgar-Austin was provided a copy of the letter of complaint by letter dated February 26, 1992. On February 28, 1992, she hand-delivered to Mr. and Mrs. Gutierrez the documents that they had requested along with a cover letter explaining she did not realize her secretary had failed to carry out her instructions."

## The panel then noted:

"The Disciplinary Administrator contends that Ms. Edgar-Austin's conduct in this matter violated Model Rules of Professional Conduct 1.1 [1992 Kan. Ct. R. Annot. 244] [A lawyer shall provide competent representation to a client.], 1.2 [1992 Kan. Ct. R. Annot. 246] [A lawyer shall abide by client's decisions concerning the lawful objectives of representation.], 1.3 [1992 Kan. Ct. R. Annot. 248] [A lawyer shall act with reasonable diligence and promptness in representing a client.], and 1.4 [1992 Kan. Ct. R. Annot. 251] [A lawyer shall keep a client reasonably informed, promptly comply with reasonable requests for information, and explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.]. The respondent stipulates that she did indeed violate those rules. The panel concurs.

"The Deputy Disciplinary Administrator advised the panel that the respondent previously received an informal admonition as a result of a 1988 complaint wherein respondent was found to have transgressed Supreme Court Rule 207 [1992 Kan. Ct. R. Annot. 160], MRPC 1.1 and 1.4 and the Disciplinary Rule counterparts of those model rules, the conduct in question having fallen on both sides of the March 1, 1988, effective date for the Model Rules of Professional Conduct.

"In mitigation, the respondent reminded the panel of the difficulties inherent in solo practice. She also noted that she had no selfish motive and no intent to cause harm to Mr. and Mrs. Gutierrez. She was indeed concerned about the proper treatment of one of her client's debts, but she readily admitted she had failed to provide sufficient information to the Gutierrezes on that score. Respondent further noted the 1988 disciplinary problem arose at a time when she was confronted with the serious illness of a child. Finally, respondent offered Exhibits 1 and 2, letters from satisfied clients. Those exhibits were admitted without objection. The Deputy Disciplinary Administrator recommended the imposition of public censure."

## The panel concluded:

"The panel consulted and concluded unanimously that violations of MRPC 1.1, 1.2, 1.3, and 1.4 have been proved by clear and convincing evidence.

The panel recommends that the Supreme Court publicly censure respondent for her conduct."

The respondent argues to this court that, under the facts, informal admonition is the proper discipline. We disagree.

The courtroom is not the place where lawyers do most of their work. A majority of a lawyer's time is spent in an office discussing legal matters with clients, obtaining factual background, determining the client's needs, and giving advice, drafting documents, or taking other steps in response to the needs of the client.

Clients come to lawyers for help. To help the client, lawyers utilize their knowledge, training, and skills. The lawyer must engage in preparation necessary and adequate under the circumstances and not neglect a matter entrusted to him or her. A lawyer who is not diligent or prepared violates a duty to the client. A lawyer may compound a violation of a duty to a client by misleading or making false statements to the client. Such conduct not only violates the lawyer's duty to the client—it exhibits a lack of moral character.

It is essential that members of the bar have the ability, knowledge, and sound moral character necessary to interpret the laws and participate in the administration of justice. Because the respondent was neither diligent nor honest with her clients, the proper discipline is public censure.

IT IS THEREFORE ORDERED that Jacqueline Edgar-Austin be and she is hereby disciplined by this court by public censure for her previously enumerated violations of the model rules of professional conduct.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this order be published in the official Kansas Reports.