No. 91,008

In the Matter of STEVEN K. JOHNSON, *Respondent.*

(80 P.3d 32)

*Stanton A. Hazlett*, disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*John J. Ambrosio,* of Topeka, argued the cause and was on the brief for respondent, and *Steven K. Johnson*, respondent, argued the cause pro se.

*Per Curiam*: This is an original uncontested proceeding in discipline filed by the Disciplinary Administrator against respondent, Steven K. Johnson, of Topeka, an attorney admitted to the practice of law in Kansas.

The formal complaint filed by the Disciplinary Administrator alleged respondent violated KRPC 1.2 (2003 Kan. Ct. R. Annot. 332) (scope of representation); KRPC 1.15 (2003 Kan. Ct. R. Annot. 395) (safekeeping client funds); and KRPC 8.4 (2003 Kan. Ct. R. Annot. 464) (professional misconduct). Prior to the hearing before the disciplinary panel, the parties stipulated to violations of KRPC 1.15(d)(1) and 8.4(c) and (g), as well as to the dismissal of the allegation respondent had violated KRPC 1.2. No exceptions have been filed.

## FINDINGS OF FACT

Based upon the facts set forth in the stipulation and respondent's letters of self-reporting, the panel made the following findings of fact and conclusions of law:

"2.   Beginning in 1987, the Respondent went to work for Fisher, Patterson, Sayler & Smith, L.L.P. as an associate. In approximately January, 1992, the Respondent became a partner in the firm.

"3.   In 1999 and 2000, the Respondent represented Dan Henry in a divorce matter. On November 15, 1999, Mr. Henry made a payment to the Respondent in the amount of $2000.00 for attorney fees. Instead of placing the money in the firm trust account, the Respondent converted the money to his own use.

"4.   After the divorce was concluded, the Respondent did not pursue collection of the amount remaining on Mr. Henry's bill. Later, in 2002, Ms. Ziegler, the

bookkeeper for the firm, attempted to collect on some past due accounts, including Mr. Henry's account. Ms. Ziegler contacted Mr. Henry regarding his unpaid balance.

"5.   On July 8, 2002, Mr. Henry went to the firm and spoke with Ms. Ziegler. Mr. Henry reviewed the firm's billing information and discovered that he had not been credited with the $2,000.00 payment made by him on November 15, 1999. The Respondent observed Mr. Henry speaking with Ms. Ziegler.

"6.   On the same day, July 8, 2002, the Respondent went to see Mr. Henry at his place of work. The Respondent asked to speak to Mr. Henry in private. The Respondent told Mr. Henry that he had cashed the $2,000.00 check and kept the proceeds himself because he needed to pay the IRS. The Respondent asked Mr. Henry to treat the $2,000.00 like a loan and 'keep it between us.' The Respondent then gave Mr. Henry $2,000.00 in cash and stated, 'thanks, I owe you one.' He advised Mr. Henry to pay the money to the firm where it should have gone in the first place.

"7.   Mr. Henry discussed this matter with a friend who was an attorney. The friend advised Mr. Henry to contact J. B. King, the managing partner of the Respondent's firm. Mr. Henry called Mr. King at home and told him what the Respondent had done.

"8.   Effective July 16, 2002, the Respondent voluntarily withdrew as a partner with the firm.

"9.   On July 16, 2002, the Respondent self-reported this conduct to the Disciplinary Administrator's office. The Respondent's letter provided, in pertinent part, as follows:

'During 1999 and 2000 I was representing Mr. Dan Henry in a divorce matter. . . .   Sometime in 1999 Mr. Henry gave me a check for $2,000 made payable to me to be applied to his legal bill with our firm. . . .   Instead of properly giving the check to the firm's bookkeeper, I deposited the check into my own account.'

"9.   On August 13, 2002, Mr. Henry wrote a letter of complaint to the Disciplinary Administrator's office and enclosed a copy of the check issued November 15, 1999.

"10.   On April 22, 2003, the Respondent self-reported a similar incident as described in the Formal Complaint filed in this case. The Respondent's letter provided:

'In the fall of 2001, I was contacted by a young man named Roy Tanner to assist him with a divorce matter. . . .   I told him that the least expensive route would be for his wife's attorney to file the Petition and prepare a property settlement agreement which I would then review for him. I told him if we went this route, I could assist him for a fee of $500.

'A few days later, Mr. Tanner later brought in to me a copy of a Petition with which he had been served and a copy of a proposed property settlement agreement. . . .   At the time he brought in the documents or perhaps a few days later he also brought me $500 either in cash or a check made out to me which I placed in the file.

. . . .

'As to the $500, I believe I left it in the file for a few days and then eventually deposited the money into my own personal account. I knew I would need to replace the money since the file would eventually have to be billed out. At the time I was preparing to leave the firm, I was reviewing all my billings and came across the pre-bill for Mr. Tanner. I noticed that my time on the file at my normal hourly rate was in excess of the $500 I had agreed to with the client. I did not have an extra $500 on that day but I decided I would have to send the firm the money as soon as I could. Since I did not want the firm to bill Mr. Tanner for the difference (not realizing that I had agreed to the $500 fee) I would have to pay the entire bill of somewhat over $900. Within a few weeks of leaving the firm, I sent the firm a check for the full amount of the billing. After receiving the check, J. B. King, the managing partner, called me and I explained to him why I was paying the Tanner bill.'

## "CONCLUSIONS OF LAW

"1.    Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.15(d)(1), KRPC 8.4(c), and KRPC 8.4(g), as detailed below.

"2.    Attorneys must safeguard their clients' property. KRPC 1.15(d)(1) provides that:

'All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable accounts maintained in the State of Kansas with a federal or state chartered or licensed financial institution and insured by an agency of the federal or state government.'

*Id.* In this case, the Respondent failed to deposit Mr. Henry and Mr. Tanner's funds into the firms' 'identifiable account.' As a result, the Hearing Panel concludes that the Respondent violated KRPC 1.15(d)(1).

"3.    'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). In 1999 and in 2001, the Respondent converted money that rightfully belonged to his law firm to his personal use. When the Respondent converted the funds belonging to his firm to his personal use, the Respondent engaged in dishonest conduct. Accordingly, the Hearing Panel concludes that by converting the fees, the Respondent 'engage[d] in conduct involving dishonesty, fraud, deceit or misrepresentation,' in violation of KRPC 8.4(c).

"4.    Additionally, engaging in 'conduct that adversely reflects on the lawyer's fitness to practice law' amounts to professional misconduct. KRPC 8.4(g). In this case, after realizing that his misconduct was about to be discovered by Mr. Henry and the law firm, the Respondent compounded his misconduct by soliciting Mr. Henry to assist him in concealing his misconduct from his law firm. Requesting Mr. Henry to keep the Respondent's conversion of the fees paid by Mr. Henry

confidential, adversely reflects on the Respondent's fitness to practice law. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(g)."

We have reviewed the record and conclude the panel's findings of fact and conclusions of law relative to the stipulated violations of KRPC 1.15(d)(1) and 8.4(c) and (g) are supported by clear and convincing evidence. We adopt those findings and conclusions.

## RECOMMENDED DISCIPLINE

At the hearing, the Disciplinary Administrator argued that respondent should receive a 2-year suspension and, thereafter, undergo a reinstatement hearing before being allowed to practice law again. The respondent argued he should receive published censure. In its final hearing report, the hearing panel unanimously recommended respondent be indefinitely suspended from the practice of law.

The panel found two aggravating factors present: (1) dishonest or selfish motive based on the conversion of funds; and (2) substantial experience in the practice of law based on the 12 years respondent had been practicing at the time the offenses occurred. The panel also found four mitigating factors present: (1) absence of a prior disciplinary record; (2) timely good faith effort to make restitution or rectify the consequences of misconduct; (3) cooperative attitude and acknowledgment of wrongdoing; and (4) previous good character and reputation in the community demonstrated by several letters provided to the hearing panel, including some from his former partners.

In making its recommendation for indefinite suspension, the panel considered American Bar Association Standards for Imposing Lawyer Sanctions 4.12 and 7.2 (1991), which state that suspension is generally appropriate: (1) when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client; and (2) when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system.

The panel then concluded:

"Attorneys are entrusted with their clients' money and their confidences. 'It is essential that members of the bar have the ability, knowledge, and sound moral character necessary to interpret the laws and participate in the administration of justice.' *In re Edgar-Austin*, 253 Kan. 440, 443, 855 P. 2d 960 (1993). In this case, the Respondent's ability and knowledge have not been questioned. However, by engaging in dishonest conduct, the Respondent has demonstrated that he currently lacks the 'sound moral character' necessary to continue to practice law."

The panel then unanimously recommended that the respondent be indefinitely suspended from the practice of law in the state of Kansas.

Clearly, the panel was concerned with the attempted coverup by respondent of the Henry fee conversion, which the panel appropriately concluded compounded the already serious misconduct. We accept the panel's recommended discipline.

IT IS THEREFORE ORDERED that Steven K. Johnson be indefinitely suspended from the practice of law in the state of Kansas effective the date of this opinion in accordance with Supreme Court Rule 203(a)(2) (2003 Kan. Ct. R. Annot. 226).

IT IS FURTHER ORDERED that respondent shall comply with the provision of Supreme Court Rule 218 (2003 Kan. Ct. R. Annot. 286), that the costs of these proceedings be assessed to the respondent, and that this opinion be published in the official Kansas Reports.